A. P. GRIMSTEAD, Adm'r, v. W. E. HUGGINS et. al.

CHANCERY PLEADINGS AND PRACTICE. *Administration. Insolvent estate.*
If, in the administration in chancery of an insolvent estate, the realty
be subject to vendors' liens which are enforced in the suit, and the ad-
ministrator collects the rents, and, in settlements made under orders
of the court, is charged with such rents and allowed his disburse-
ments thereof in the payment of debts and expenses of administration
by decrees rendered from time to time in confirming reports by the
master of such settlements, the reports not being excepted to, neither
the court below nor this court upon appeal by the minor heirs of the
deceased, can go behind those decrees, the heirs being all the time
before the court by guardian *ad litem.*

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville.   A.
G. MERRITT, Ch.

J. P. HELMS for complainant.

COVINGTON & ATCHISON for defendants.

COOPER, J., delivered the opinion of the court.

W. E. Huggins died in 1865, leaving a widow
and four children.   The widow qualified as adminis-
tratrix of his estate, and acted as such, but without
making any settlement of the administration, until her
death in 1868.   Before her death she seems to have
suggested to the county court the insolvency of her
husband's estate.   After her death A. P. Grimstead
was appointed and qualified as the administrator *de
bonis non* of the estate of W. E. Huggins.   On

September 29, 1868, he filed the original bill in this cause against the children and creditors of his intestate, to remove the administration of the estate from the county to the chancery court, and to settle the same as an insolvent estate. Such proceedings were had in the cause that the insolvency of the estate was ascertained and declared, the debts ascertained, the realty sold, and the assets distributed. A. P. Grimstead died, and the cause was revived on July 20, 1883, against A. J. Roper, as his administrator, over his protest, and a reference made to the clerk and master to report the real estate of which W. E. Huggins died possessed, the amount received therefrom by A. P. Grimstead, and the taxes paid by him. The master made a report accordingly, from which it appeared that Grimstead had collected, between 1868 and 1873 inclusive, a certain amount of rents after deducting taxes paid. The children then moved for judgment against A. J. Roper, as administrator of Grimstead, for the net balance of rents thus found. But the chancellor was of opinion, and so decreed, that these rents had been reported to the court as collected and paid out on the debts of the estate in the administration suit, and that these reports had been confirmed by the court without exception, the rights of the parties being thereby concluded. The children appealed.

W. E. Huggins had died seized and possessed of three tracts of land, each of which was encumbered with a lien for unpaid purchase money, in satisfaction of which they were sold. He had sold two other

tracts of land, treated as one tract, to one B. C. Towns, and had in his life-time filed a bill to enforce his vendor's lien thereon for unpaid purchase money. They were sold accordingly, Grimstead, as administrator, buying them in for the benefit of the estate. As to these two tracts of land, it is clear that Grimstead held them, as he held the claim for unpaid purchase money, as assets of the estate for the benefit of creditors. The children would have no interest in these lands or their rents and profits until the debts were paid. The other tracts were subject to liens of vendors, who were proceeding by bills or cross-bills to enforce these liens. There is evidence tending to show that the chanceller had appointed Grimstead a receiver to take possession and rent the lands under these bills, but no entry of the appointment was made until 1874, when the order recites generally a previous appointment, and purports to be *nunc pro tunc*. There is also evidence that during this period it was supposed that the real estate would more than pay the debts. On April 21, 1869, the clerk and master, in pursuance of an order made for the purpose, made a report of a settlement with the administrator, in which the administrator was charged with assets received, including rents for the years 1868 and 1869, and allowed certain disbursements, which report, not being excepted to, was confirmed. On July 27, 1874, the clerk and master, upon like order, reported another settlement, in which the administrator was charged with the balance on the previous settlement, and subsequent collections, including

Grimstead v. Huggins.

the rents for the years 1870, 1871, 1872 and 1873, and allowed his disbursements and compensation, leaving a balance in his hands of $482.43, which report, being unexcepted to, was also confirmed. Subsequent reports, confirmed because unexcepted to, show the disbursement in the payment of debts of this balance.

If it be conceded that Grimstead was acting in the collection of rents under a mistaken idea that he had been legally appointed receiver, and if it be further conceded that the entry in 1874 of his appointment *nunc pro tunc* was of no avail, yet he made settlements under decrees of the court in which he charged himself with these rents, and was allowed credit for the disbursement thereof in the payment of the debts of the estate and expenses of administration. These settlements were reported to the court and confirmed without exception. The children of W. E. Huggins, the present appellants, were properly made parties to the suit, and appeared and answered by guardian *ad litem* regularly appointed. It is very clear that the chancellor, in the year 1883, could not, in the same suit, go behind these decrees and make a different disposition of the funds. Nor do we see how the children are in any better condition upon an appeal, even if it brings up for revision those decrees. For the reports, not being excepted to, were properly confirmed. There is no error in them of which the parties, who did not complain then, can now complain. The reports being unexcepted to we are as much bound to confirm them as was the chancellor.

Affirm the decree with costs.